UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-129-GWU

JERRY LEE HOLLOWAY,                                                     PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

Jerry Holloway brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income (SSI). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

>    Impairments). If so, disability is conclusively presumed and benefits are awarded.

> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u> Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to

make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Holloway, a former farm worker and salvager, suffered from impairments related to back and neck pain and borderline intelligence. (Tr. 17, 22). Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of work at all exertional levels. (Tr. 20). Since the claimant was found able to return to his past relevant work, he could not be considered totally disabled. (Tr. 22).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. However, the current record also does not mandate an immediate award of SSI. Therefore, the court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

Holloway argues that the ALJ erred in failing to properly evaluate whether his mental problems met the requirements of § 12.05(B) of the Listing of Impairments concerning mental retardation. The Listing requires a claimant to produce a "valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 1, § 12.05(B). The regulations further provide that:

> Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence supports onset of the impairment before age 22.

20 C.F.R., Part 404, Subpart P, App. 1, § 12.05. Thus, to satisfy the requirements of § 12.05(B), a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period.

Psychologist Julie Joseph-Fox was the only mental health professional of record to examine Holloway. Joseph-Fox administered the Wechsler Adult Intelligence Scale, Revision Three test to the plaintiff, who obtained a verbal IQ score of 60, a performance IQ score of 55 and a full scale IQ score of 53. (Tr. 146). The performance and full scale IQ scores were within Listing range. The administrative regulations provide that:

> In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided as in the Wechsler series, we use <u>the lowest of these</u> in conjunction with 12.05.

20 C.F.R., Part, 404, Subpart P, App. 1, § 12.00D (emphasis added). The claimant asserts that these scores are sufficient to meet the requirements of § 12.05(B).

The ALJ concluded that the IQ scores obtained by Joseph-Fox were not valid. (Tr. 18). The ALJ based this decision on the Rey 15-Item Test administered by the psychologist, which she asserted revealed malingering. (Id.). However, the undersigned notes that Joseph-Fox specifically stated that the test results she

obtained during the examination "are consistent with presentation and are considered a <u>valid</u> estimate of his ability." (Tr. 145) (emphasis added). The examiner ultimately diagnosed mild mental retardation. (Tr. 148). Significantly, while noting the low Rey testing score (5 of 15 correct items), the psychologist who administered the testing did not state that this result indicated malingering or negatively affected the validity of the other testing results. (Tr. 146). A medical advisor was not obtained to address the validity of the IQ scores. The ALJ essentially acted as her own medical advisor on this question. Therefore, the court finds that the ALJ lacked sufficient reason to find these IQ scores invalid and, so, this portion of the Listing requirement is satisfied.

      The court turns to the issue concerning whether Holloway has the required deficits in adaptive functioning, manifested before the age of 22, to meet the Listing. Joseph-Fox noted that her interview with the plaintiff indicated that he had a limited education and suffered from relative cultural deprivation. (Tr. 147). He reported to her a history of special education. (Id.). The claimant also reported a sporadic work history involving mostly unskilled farming work and manual labor. (Id.). The examiner obviously concluded that this background was sufficient to show the deficits in adaptive functioning which were required for a diagnosis of mild mental retardation.

09-129 Jerry Lee Holloway

The court notes that the record was reviewed by Psychologists Jane Brake (Tr. 153-166) and Ilze Sillers (Tr. 167-180).[1] Each medical reviewer opined that despite his low test scores, Holloway's adaptive functioning appeared higher. (Tr. 154, 168). An ALJ may rely upon the opinion of a non-examiner when the non-examiner clearly states the reasons for his differing opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present action, the reviewers erroneously stated that the plaintiff had admitted he was able to obtain a driver's license. Otherwise, they only cited a "scattered" history of manual labor, a factor also considered by the examiner. (Tr. 151, 183). Therefore, their opinions cannot be used to offset that of the examining source.

Holloway's hearing testimony noted the history of special education with an inability to read newspapers, completing only the 6th grade, and a sporadic work history heavily dependent upon employment by or with relatives such as his nephew. (Tr. 27-29). Ella Carrender-Holloway, the claimant's sister, also testified to his long-term low level of functioning with a history of special education, difficulty performing routine household tasks, and an inability to drive.[2] (Tr. 33-39). School

---

[1] Curiously, both reviewers assessed the case under § 12.02 concerning organic mental disorders rather than 12.05.

[2] Both the plaintiff (Tr. 27) and his sister (Tr. 34) testified that he had never had a driver's license. Joseph-Fox indicated that he used an expired driver's license for identification purposes at her examination. (Tr. 145). This discrepancy can be explored upon remand.

09-129  Jerry Lee Holloway

records from Metcalfe County School System reveal that the plaintiff was in the 6th grade in 1981, a time when he would have been approximately 15 years old. (Tr. 131). This indicates the claimant was academically well behind most of his peers who would have been in high school at this age. These reports provide at least some evidence that Holloway had the required deficits in adaptive functioning.

The ALJ felt that Holloway had failed to sufficiently document his claims of having been in special education and also noted that he had failed to submit any intelligence testing from the formative years. (Tr. 21). However, the Sixth Circuit Court of Appeals, in the unpublished decision of McPeek v. Secretary of Health and Human Services, 19 F.3d 19, 1994 U.S. App. Lexis 3478 (6th Cir. February 24, 1994), concluded that to require a plaintiff to produce IQ testing from the time period before the age of 22 would unfairly foreclose recovery by all those unfortunate enough to have had no opportunity for such testing and, so, was unreasonable.[3] A medical advisor testified in the case that in the absence of some evidence of brain damage or other neurological trauma, the claimant's intellectual functioning was likely to have been little changed since the developmental years. McPeek, 1994 U.S. App. Lexis 3478 at page 6. The Sixth Circuit Court of Appeals found that the ALJ would have to point to empirical evidence which indicated a decline in

---

[3] The undersigned was reversed on this point by the Sixth Circuit Court of Appeals in McPeek.

11

09-129  Jerry Lee Holloway

intellectual functioning since the 22nd birthday in order to deny benefits.  McPeek, 1994 U.S. App. Lexis 3478 at page 7.

The Eleventh Circuit Court of Appeals has found that in the absence of evidence of a sudden trauma that can cause mental retardation, a valid IQ test creates a rebuttable presumption of a fairly constant IQ throughout life.  Hodges v. Barnhart, 276 F.3d 1265, 1268-1269 (11th Cir. 2001).  The Eighth Circuit Court of Appeals has observed that an individual's IQ is presumed to remain fairly stable over time in the absence of evidence of intellectual deterioration.  Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001).  The Fourth Circuit Court of Appeals has found that courts should assume an IQ remained constant through life absent evidence indicating a change in intellectual functioning.  Luckey v. U.S. Dept. of Health and Human Services, 890 F.2d 666, 668 (4th Cir. 1989).  The reasoning of Hodges has been specifically followed by District Courts in the Sixth Circuit Court of Appeals in Davis v. Commissioner of Social Security, 2009 U.S. Dist. Lexis, 9786 (E.D. Mich. 2009) and in Wilson v. Astrue, 2009 U.S. Dist. Lexis 20013 (E.D. Ky. 2009).  Thus, it would appear that the ALJ needed to point to at least some evidence of mental deterioration or identify some evidence of higher functioning during the developmental time period and could not simply rely on a paucity of evidence from the plaintiff.  Therefore, a remand of the action for further consideration of whether

09-129  Jerry Lee Holloway

Holloway suffered from the required deficits in adaptive functioning prior to the age of 22 is required.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the court must grant the plaintiff's summary judgment motion to this extent and deny that of the defendant. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 23rd day of December, 2009.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**